UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 2:21-CR-00028-01** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **MICHAEL ANTHONY THOMAS (01)** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM ORDER

Before the Court is the "United States' Consolidated Notice of Intent to Use Evidence Pursuant to Rule 404(B) and Motion with Incorporated Memorandum for a Pretrial Determination of the Admissibility of Other Acts Evidence" (Doc. 37). Defense counsel has not filed an opposition to this motion.

## BACKGROUND

Defendant, Michael Anthony Thomas was indicted on February 10, 2021, in a one-count indictment for violating Title 18, USC §§ 922(g)(9) and 924(a)(2)--possessing a loaded firearm after having been convicted of a misdemeanor crime of domestic violence. The charge arose from a domestic dispute between Thomas and his cohabitant girlfriend, P. Simien.

At the time of the dispute, Thomas was prohibited from possessing firearms due to two prior convictions for committing misdemeanor crimes of domestic violence against the same victim, P. Simien.[1]

---

[1] On May 24, 2018 and March 12, 2019, Thomas was convicted of committing a "domestic abuse battery" in violation of La. R.S. § 14:35.3.

The Government asserts that even though Simien initially cooperated with investigators and the Assistant United States Attorney, and stated under oath, that Thomas had pointed the firearm at her and threatened to kill her, Simien now has changed her recitation of the events. Consequently, the Government anticipates that Simien will offer perjured testimony at the trial of this matter.

Furthermore, the Government anticipates that Thomas will assert an affirmative defense at trial, that on the date of the incident he had to disarm Simien and was thus justified in possessing the firearm.

*Prior bad acts*

The Government intends to introduce at trial certain prior acts concerning Thomas and Simien as follows:

- March 15, 2015 – Lake Charles Police Department ("LCPD") responded to a domestic disturbance involving an altercation between Thomas and Simien. Simien was determined to be the victim but did not press charges.

- August 5, 2017 – LCPD responded to a domestic disturbance involving an altercation between Thomas and Simien which revealed physical injuries to Simien.  The District Attorney's Office charged Thomas with committing a "domestic abuse battery" upon Simien in violation of Louisiana Revised Statute § 14:35.3. Thomas pleaded "guilty" to the offense on May 24, 2018, and received "time served" of twenty days in the parish jail.

- December 29, 2017 – LCPD responds to a domestic disturbance involving an altercation between Thomas and Simien. Simien was the victim but refused to press charges.

- September 18, 2018 – LCPD presented to Simien's residence due to a disturbance complaint. During the investigation Simien reported that Thomas had struck here in the past and was attempting to physically assault her. Simien initially expressed an interest in pursuing charges against Thomas but did not follow through.

- February 12, 2019 - LCPD responded to a domestic disturbance involving an altercation between Thomas and Simien. Simien reported that during the altercation, Thomas pushed her to the bed, kicked her in her stomach, and strangled her to the point that she could not breath. Thomas also broke the bedroom window. After locating Thomas, officers noted that he appeared intoxicated; he denied harming Simien. Thomas reported that Simien had attacked him with a knife. The officers investigated the incident but was unable to locate a knife. The District Attorney's Office charged Thomas with committing a "domestic abuse battery" upon Simien in violation of Louisiana Revised Statute § 14:35.3 to which Thomas pleaded guilty admitting to Simien's version of the events. In addition to receiving a "time served" sentence of 30 days, Thomas was also served with an "Order to Transfer Firearms and Suspend Handgun Permit."

*Current offense*

The instant offense involved a call to 9-1-1 in which Simien reported that Thomas had "pulled a gun" on her and threatened her life, further indicating that if law enforcement did not get there quickly, she would be dead. Upon arrival, officers heard Simien and Thomas arguing. Law enforcement ordered Thomas to leave the home, to which Thomas complied. Officers then detained Thomas who admitted that he had a firearm in his back pocket. Thomas stated that he took the firearm from Simien because she tried to kill him. Officers seized a loaded .32 "S&W" Long" caliber revolver.

During the investigation, Simien reported that Thomas had tried to kill her and that he had pointed the firearm at her face. Thomas could not explain to the officers why he remained in the home after allegedly taking the firearm from Simien. Simien's nephew, who was also present in the house at the time of the incident witnessed some of the events that happened that morning. He reported that he "heard [Simien] screaming" 'he's trying to kill me; he's trying to kill me; call 9-1-1-!" The nephew dialed 9-1-1 for Simien. The nephew witnessed Thomas pointing the firearm at Simien.

## LAW AND ANALYSIS

Federal Rule of Evidence 404(b) provides that extrinsic offense evidence is generally not admissible to prove the defendant's bad character and that the defendant acted in conformity with that bad character; however, it may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The Government maintains that the evidence it intends to introduce is admissible as extrinsic evidence to the charge crime as (1) the events leading

up to and following Thomas's arrest, (1) Thomas's prior domestic violence offenses, and (3) to the implausibility of Thomas's affirmative defense.

The Supreme Court has held that the Government need not prove by a preponderance of the evidence that the act(s) occurred; instead, the Government must prove sufficient evidence such that "the jury can reasonably conclude that the other act occurred and the defendant was the actor." *Huddleston v. United States,* 485 U.S. 681, 389 (1988). The bad-acts evidence does not need to be a conviction. See *Downing v. United States,* 493 U.S. 342, 348 (1990) (holding that even if the defendant had been previously acquitted of the alleged misconduct, the prior bad act may be introduced into evidence under Federal Rule of Evidence 404(b)).

In *United States v. Beechum,* the Fifth Circuit emphasized that the trial court must engage in a two-step process of evaluating the admissibility of such "other crimes" evidence: (1) the extrinsic evidence must be relevant to an issue other than the defendant's character, and (2) the evidence must possess probative value that outweighs any danger of any unfair prejudice, confusion, misleading the jury, or needless presentation of cumulative evidence. 582 F.2d 898, 911 (5th Cir. 1978).

The Government argues that evidence leading up to Thomas's arrest is admissible because it includes the chain of events from the time Simien woke up until Thomas pointed the gun in her face and would allow the jury to evaluate all of the circumstances under which Thomas acted. See *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996). Moreover, the evidence and the crime are inextricably intertwined, part of a single criminal episode, and contextually linked due to the close temporal proximity and strong factual

nexus. See *United States v. Gurrola,* 898 F.3d 524, 537 (5th Cir. 2018) (finding that "temporal proximity" is one relevant factor in determining whether evidence of another act is intrinsic to the charged crime; see also *Coleman*, 78 F.3d at 156 (focusing on the close temporal and factual connections of the other acts to the charged crime and how those connections helped prove the crime's elements.).

The Court agrees with the Government that this evidence is relevant as it puts all of the subsequent events, including the charged crime, in context and demonstrates their cause-and-effect relationship. See *Gurrola*, 898 F.3d at 536-37 (finding that intrinsic evidence establishes a "timeline of events" and "complete[s] the story of the crime at trial"); *Coleman,* 78 F.3d at 156.

Concerning evidence of Thomas's prior bad acts, the Government informs the Court that Simien now recants her original version of the events that took place on January 19, 2020. Therefore, Thomas's history of abuse, power, and control which includes Thomas's domestic violence history will show a pattern of abusive action and behavior two Simien. Moreover, the cycle of abuse described above is consistent with not just physical domestic abuse, but also emotional manipulation and intimidation. The Government argues that this pattern will explain (1) why Simien's version of events has apparently changed, and (2) why she intends to provide perjured testimony at trial.

Rule 404(b) extrinsic offense evidence may be admissible to show motive. The Government argues that the evidence will show Semien's motive to lie in Thomas's presence at trial. The Government intends to introduce this evidence to show that Semien is scared of Thomas and of the repercussions she faces for telling the truth while testifying

at trial. In other words, fear is her motive to alter her trial testimony. See *United States v. Zizzo,* 120 F.3d 1338 (7th Cir. 1997) (the prosecution may elicit testimony about, or introduce evidence concerning a defendant's uncharged violent conduct to show a basis for a victim's fear). In addition, the Government remarks that it is not opposed to the Court providing proper limiting instructions to the jury if the Government introduces at trial past instances of the Defendant's conduct toward Simien.

The Court agrees that due to the victim's recantation of the events that transpired, the evidence the Government intends to introduce of Thomas's prior bad acts is relevant. Furthermore, because Thomas intends to assert a justification-type defense at trial for his actions, the Government's evidence of Thomas's prior bad acts is relevant to rebut that defense.

The next step is to determine if the probative value substantially outweighs unfair prejudice under Federal Rule of Evidence 403. Before a court may exclude extrinsic evidence, it must find that the danger of unfair prejudice substantially outweighs the incremental probative value of the evidence. *Beechum,* 582 F.2d at 911; *United States v. McMahon,* 592 F.2 871 (5th Cir. 1979)). "While some danger of prejudice is always present, exclusion of extrinsic evidence based on its prejudicial effect 'should occur only sparingly.'" *United States v. Leahy,* 82 F.3d 624, 637 (5th Cir. 1996) quoting *United States v. Pace,* 10 F.3d 1106, 1115 (5th Cir. 1996).

The Government argues that the evidence it intends to introduce is highly probative as it shows that Thomas's actions on January 19, 2020, were part of a single criminal episode. The extrinsic evidence will show Simien's motive to alter her testimony at trial in

a matter inconsistent with what she previously stated under oath. The extrinsic evidence will demonstrate Thomas's common plan and pattern, as well as knowledge, in formulating defenses for his actions, along with the implausibility of his affirmative defense. The Government remarks that a limiting instruction can be given to the jury to mitigate any potential prejudicial effect.

The Court finds that the probative value of the evidence on the day of the incident (January 2020) and Thomas's prior bad acts is not only relevant, but its probative value outweighs any prejudicial effect. The Court will permit defense counsel to propose limiting instructions consistent with this ruling.

## CONCLUSION

The Court finds that the evidence discussed herein by the Government is relevant and admissible at the trial of this matter. Accordingly,

**IT IS ORDERED** that the Motion for a Pre-Trial Determination on the Admissibility of the Other Acts Evidence is hereby **GRANTED,** and this evidence will be permitted at the trial of this matter.

**THUS DONE AND SIGNED** in Chambers on this 31st day of August, 2021.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**